United States Courts
Southern District of Texas
FILED

FEB 2 6 2013

David J. Bradley, Clerk of Court

JOE SHIELDS
16822 Stardale Lane
Friendswood, Texas 77546
Phone: 281-482-7603

JOE SHIELDS IN PRO PER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOE SHIELDS | ) | CIVIL ACTION No. _____ |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PAC-WEST TELECOMM INC AND JOHN | ) | COMPLAINT FOR CIVIL DAMAGES |
| DOES 1-10 | ) | AND PERMANENT INJUNCTIVE |
| | ) | RELIEF |
| | ) | |
| Defendants | ) | JURY TRIAL REQUESTED |

### ORIGINAL COMPLAINT

1. Plaintiff Joe Shields brings this action under the Telephone Consumer Protection Act (hereinafter TCPA), 47 U.S.C. §227, (1991) and the Code of Federal Regulations (hereinafter CFR) implementing the TCPA, 47 CFR §64.1200 to obtain statutory civil damages, treble damages, permanent injunctive relief and all other equitable relief the Plaintiff is entitled to.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. §227(b)(3) and 28 USC §1357. Federal Courts have federal question jurisdiction, 28 USC §1331, because this case is about a cause of action created by a

federal statute namely 47 U.S.C. §227(b)(3). Federal Courts have federal jurisdiction, 28 USC §1357, because this case is about an injury to a person under an Act of Congress namely 47 U.S.C. §227.

3. Venue is proper in this District under 28 USC §1391(b)(2) because all or a substantial part of the events or omissions giving rise to the stated claim(s) occurred in Harris County, Texas.

<u>PLANTIFF</u>

4. Plaintiff is an individual residing in Harris County, Texas. Plaintiff is a cellular and residential telephone subscriber and has had his current cellular telephone numbers since August of 2007. Prior to the events complained about Plaintiff had not initiated or requested any contact of any kind with the Defendants.

5. Plaintiff never provided prior express consent to the Defendants or anyone acting in concert with the Defendants for automatically dialed prerecorded message calls commonly referred to as "robocalls" to be made to Plaintiff's cellular telephone numbers. Further, Plaintiff's telephone numbers have been listed on the State and Federal do-not-call list since the inception of such list or upon being assigned any telephone numbers.

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

<u>DEFENDANTS</u>

6.  Pac-West Telecomm Inc. (Hereinafter "Pac-West") is a California corporation operating under Texas laws. The Defendant may be served by serving any employee of Defendant's Texas registered agent Corporation Service Company d/b/a CSC - Lawyers Inco via certified mail return receipt requested at 211 East 7TH Street Suite 620, Austin, Texas 78701.

7.  Defendant's John Does are customers of Pac-West that acting in concert with Pac-West refuse to properly identify themselves as required by law and intentionally conceal the identity of those responsible for initiating illegal robocalls to Plaintiff's and members of the public cellular telephone numbers. These entities are readily identifiable by Defendant Pac-West.

<u>DEFENDANT'S BUSINESS PRACTICES</u>

8.  The Defendants act in concert to promote and sell automobile insurance. Defendant Pac-West provides telecommunications services used to initiate unauthorized and unsolicited advertisements in the form of robocalls to consumer's cellular telephone numbers throughout the nation without prior express consent of the recipients of the calls. Such calls are made despite the fact that in most instances the telephone numbers called are listed on the National do-not-call list.

9.  On or about January 10th, 2013 Plaintiff began receiving robocalls on his cellular telephone numbers promoting auto

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

insurance. Plaintiff served Defendant Pac-West with an Automatically Dial Announcing Device (hereinafter "ADAD") complaint on February 4th, 2013. Despite a Texas state law requirement to provide the identity of subscriber information to a state agency tasked with investigation of ADAD complaints Pac-West intentionally concealed the identity of their customer. See Texas Utilities Code §55.129, Texas Administrative Code §26.125(c) and PUC Substantive Rules §26.125.

10. To add insult to injury Defendant Pac-West in both an email and a telephone call to the Plaintiff, which Plaintiff was able to record, Defendant Pac-West readily admitted that Defendant had in some fashion forwarded Plaintiff's ADAD complaint which included Plaintiff's cellular and residential telephone numbers to their customer. Defendant Pac-West further admitted that their customer had placed Plaintiff's cellular number on a do-not-call list. By doing so Defendant "stepped into the shoes" of their customer and permitted their customers conduct thus ratifying their liability for the illegal robocalls to Plaintiff's cell numbers. See 47 U.S.C. §206.

11. Defendant Pac-West did not have Plaintiff's consent to forward his ADAD complaint to anyone other than the Texas state agency tasked with investigating ADAD complaints. By forwarding Plaintiff's ADAD complaint to Defendant Pac-West's customer

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

Defendant Pac-West caused an even greater invasion of Plaintiff's privacy.

12. Finally, Defendant Pac-West "crossed the line" when Defendant forwarded Plaintiff's complaint to their customer. Carriers do not propagate do-not-call requests for their customers. There is no legal requirement to do so. Doing so is nothing more than a sham attempt at compliance with the TCPA. By crossing the line and stepping into their customers shoes Defendant Pac-West ratified Defendant Pac-West's liability for the illegal robocalls to Plaintiff's cellular telephone number. *Id.*

THE TCPA

13. The TCPA prohibits robocalls without prior express consent of the called party. See 47 U.S.C. §227(b)(1)(A) and 47 CFR §64.1200(a)(1). Robocalls made without prior express consent are an invasion of Plaintiff's privacy and use up valuable minutes from Plaintiff's calling plan(s). Plaintiff incurs a deduction of minutes from Plaintiff's calling plan whether he answers the robocalls or lets them go to Plaintiff's voicemail.

14. The TCPA requires that all robocalls provide the name and separately the telephone number of the entity responsible for the robocall. See 47 CFR §64.1200(b)(1) and 47 CFR §64.1200(b)(2). In regards to the complained about robocalls the callers intentionally failed to provide the required identification.

15. Defendant Pac-West need not be the one that actually initiated the robocalls to be equally and severally liable for the violation(s) of the TCPA. The TCPA, the FCC and the courts hold that under the strict vicarious liability of Federal law those that benefit from violations of the TCPA are liable for such violation(s). Further, when a common carrier such as Defendant Pac-West permits unlawful acts to occur on its network that carrier is liable for the full amount of damages Plaintiff has incurred. See 47 U.S.C. §206.

<u>VIOLATIONS OF THE TCPA</u>

Counts I through III

16. Plaintiff realleges and incorporates the allegations above as though fully set forth herein. On or about January 10th, 2013 at or about 4:04 p.m. the 1st of three (3) robocalls advertising auto insurance was initiated to Plaintiff's cellular telephone number 281-468-9701. The call was recorded. See Exhibit #1 attached hereto. On or about February 8th, 2013 at 12:35 p.m. the 2nd of three (3) robocalls advertising auto insurance was initiated to Plaintiff's cellular telephone number 281-468-9701. The call was recorded. See Exhibit #2 attached hereto. On or about February 11th, 2013 a 3rd robocall advertising auto insurance was initiated to Plaintiff's cellular telephone number 281-455-9402. See Exhibit #3 attached hereto. See also Plaintiff's affidavit attached hereto.

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

17. There was never any prior express consent from the Plaintiff for anyone to initiate such robocalls to Plaintiff's cellular telephone numbers. Thus the initiation of such robocalls are a violation of 47 U.S.C. §227(b)(1)(A)(iii) and 47 CFR §64.1200(a)(1)(iii).

### Counts IV through VI

18. Plaintiff realleges and incorporates the allegations above as though fully set forth herein. The robocalls failed to provide the name of the business, individual or other entity responsible for initiating the robocalls. See Exhibits #1 - #3. Thus the failure to identify the entity responsible for the robocalls is a violation of 47 CFR §64.1200(b)(1).

### Counts VII through IX

19. Plaintiff realleges and incorporates the allegations above as though fully set forth herein. The automatically robocalls failed to provide the telephone number of the business, individual or other entity responsible for initiating the robocalls. See Exhibits #1 - #3. Thus the failure to provide the telephone number of the entity responsible for the robocalls is a violation of 47 CFR §64.1200(b)(2).

### Counts X through XII

20. Plaintiff realleges and incorporates the allegations above as though fully set forth herein. The robocalls were initiated to telephone numbers listed on the National do-not-call list for

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

more than thirty one (31) days at the time the robocalls were initiated. Thus the automated robocalls are a violation of 47 CFR §64.1200(c)(2).

## APPLICABLE TO ALL COUNTS

21. Plaintiff has suffered actual damages for robocalls to his cellular telephone numbers. The TCPA states that an individual may bring a civil action against a person who violates the TCPA for actual or statutory damages for each violation of the TCPA. See 47 U.S.C. §227(b)(3) and 47 U.S.C. §227(c)(5). Consequently, Plaintiff hereby seeks statutory damages of $500.00 for each violation of section "b" of the TCPA and up to $500.00 for each violation of section "c" of the TCPA. Thus, Plaintiff seeks $500.00 for counts one (1) through nine (9) and up to $500.00 for counts ten (10) through twelve (12).

22. Plaintiff additionally alleges that the violations of the TCPA committed by the Defendants were done willfully and/or knowingly. Pursuant to 47 U.S.C. §227(b)(3) and 47 U.S.C. §227(c)(5), Plaintiff seeks additional damages in an amount determined by the Court to be equal to treble the amount found by the Court in accordance with Paragraph 21 hereof.

## PERMANENT INJUNCTIVE RELIEF

23. An injunction is a matter of law pursuant to 47 U.S.C. §227(b)(3)(A) and 47 U.S.C. §227(c)(5)(A). Plaintiff and members of the public will benefit from injunctive relief.

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

24. Plaintiff alleges that Defendants will continue to irreparably harm Plaintiff and others by continuing to initiate robocalls to Plaintiff's and other members of the public's cellular telephone numbers without prior express consent. Plaintiff alleges that Defendant's will continue the invasion of Plaintiff's and members of the public privacy and will continue to steal valuable minutes from Plaintiff's and members of the public calling plan(s). Consequently, Plaintiff, pursuant to 47 U.S.C. §227(b)(3)(A) and 47 U.S.C. §227(c)(5)(A), seeks a permanent injunction barring the Defendants from:

a. Initiating by or on their behalf, assisting, facilitating, permitting or causing automatically dialed and prerecorded message calls commonly referred to as "robocalls" to the cellular telephone numbers of members of the public without 1st obtaining prior express consent of the recipient of the call.

b. Initiating by or on their behalf, assisting, facilitating, permitting or causing robocalls to the telephone numbers of members of the public which fail to provide the name of the business, individual or other entity responsible for initiating the robocall.

c. Initiating by or on their behalf, assisting, facilitating, permitting or causing robocalls to the telephone numbers of

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

members of the public which fail to provide the telephone number of the business, individual or other entity responsible for initiating the robocall.

d. Initiating by or on their behalf, assisting, facilitating, permitting or causing unsolicited robocalls to the telephone numbers of members of the public whose telephone numbers are listed on the National do-not-call list.

<u>PRAYER FOR RELIEF</u>

25. WHEREFORE, premises considered, Plaintiff prays that the Defendants be cited to appear and answer herein and that upon trial hereof Plaintiff recover a judgment of and from the Defendants equally and severally for his damages as allowed by law, treble damages, as allowed by law, preliminary and permanent injunctive relief as allowed by law, all costs of court and for all such other and further relief, at law and in equity, to which Plaintiff may show himself justly entitled.

_____

Joe Shields
Plaintiff Pro Per
16822 Stardale Lane
Friendswood, Texas 77546
Home: 281-482-7603

COMPLAINT FOR DAMAGES AND PERMANENT INJUNCTIVE RELIEF

## AFFIDAVIT OF JOE SHIELDS

**STATE OF TEXAS**       §
                                §
**COUNTY OF GALVESTON**    §

On this day Joe Shields personally appeared before me, and being by me first duly sworn, deposed on his oath and stated as follows:

1. I am Joe Shields. I am more than twenty-one (21) years old. I have never been convicted of a felony or misdemeanor involving moral turpitude. Every statement in this affidavit is true and correct. I have personal knowledge of every fact set forth in this affidavit, and I acquired such personal knowledge by observing the facts and events set forth in this affidavit.

2. I reside at a residence at 16822 Stardale Lane, Friendswood, Texas 77546, Harris County. I have resided at that address for the last eighteen (18) years. I am a cellular telephone subscriber and have had my current cellular telephone numbers since August of 2007. I have never provided prior express consent to anyone to make automatically dialed prerecorded message calls to any of my cellular telephone numbers.

3. On or about January 10th, 2013 I began receiving unsolicited automatically dialed prerecorded message calls to my cellular telephone numbers that advertised auto insurance. Prior to that date I had never received any similar automatically dialed prerecorded message calls. The attached documents titled Exhibit #1 through Exhibit #3 are a true and accurate transcript and caller ID pictures of the unsolicited automatically dialed and prerecorded message calls I began receiving on January 10th, 2013.

4. I was able to determine that the automatically dialed and prerecorded message calls were made through the Pac-West Telecomm Inc. telecommunications network. Consequently, I filed the appropriate Automatically Dialed Announcement Device (ADAD) complaint with Pac-West Telecomm Inc. The attached document titled Exhibit #4 is a true and accurate copy of my ADAD complaint.

5. Pac-West Telecomm Inc. failed to comply with Texas law on forwarding ADAD complaints to the Texas Public Utility Commission. What Pac-West Telecomm Inc. did with my ADAD complaint is typical of those know that know that illegal robocalls are being made to cell numbers. Pac-West Telecomm Inc. forwarded my ADAD complaint to their customer. This was done despite my having provided a copy of the Texas statute and the form dealing with ADAD complaints. The attached document titled Exhibit #5 is a true and accurate copy of an email from a Pac-West Telecomm Inc. employee admitting that they had "informed" their customer of my complaint and that their customer had placed my number on a their do-not-call list.

6. Prior to that email I received a telephone call from a Karin Adair wherein she stated that: "...to let you know that we ah did research the number and we contacted our um business customer and they've contacted their end user to have your number removed..."

7. Obviously, the Pac-West Telecomm Inc. employee made several misrepresentations of fact in their email. How can a number be added to a do-not-call list if they have not been provided with the number? Obviously, Pac-West had provided my telephone number to their customer otherwise my number could not possible be "removed" from any list or be "placed" on any list. Further, State rules not FCC rules applied to my properly filed ADAD complaint.

8. Pac-West Telecomm Inc. expects Plaintiff to agree to placement of his cellular number on their customers do-not-call list which is nothing more than sham compliance with the TCPA. Further, Pac-West Telecomm Inc. and their customer intentionally conceal the identity of those responsible for initiating illegal robocalls to Plaintiff's cellular telephone number. Even when asked to properly identify themselves they either provide a bogus company name or disconnect the call. The fact remains that prior express consent was not obtained from me prior to the initiation of the automatically dialed and prerecorded message calls to my cell numbers and my cellular telephone numbers were already on the State and Federal do-not-call list.

9.  I attempted to explain to representatives of Pac-West Telecomm Inc. what they can and cannot do with ADAD complaints. The representatives of Pac-West Telecomm Inc. became argumentative and hung up on me. Even when I explained that forwarding my ADAD complaint to their customer was an invasion of my privacy I was told that was Pac-West Telecomm Inc.'s way of acting with "due diligence".

10. The only reasonable explanation for this forwarding of my ADAD complaint to those I was complaining about is that Pac-West Telecomm Inc. is acting in concert with its customers to initiate illegal robocalls to my cell number and is intentionally concealing the identity of those doing so.

11. My cellular telephone number has been registered with the National and State do-not-call list since September 2007. Exhibit #6 is a true and accurate National do-not-call list registration verification. I have redacted the physical location on my inbox and my email address for privacy purposes.

12. I attempted to "play along" with the automatically dialed prerecorded message calls for the purpose of identifying the entity responsible for the calls to no avail. Nevertheless, playing along does not constitute my prior express consent for the calls to have been made to my cell numbers.


Further Affiant sayeth not.

_Joe Shields_

Joe Shields

Subscribed and Sworn to before me by the said Joe Shields on this 25th day of ___FEBRUARY___, 2013

**DIANE F. RIOS**
Notary Public, State of Texas
My Commission Expires:
02/26/2014

_Diane F. Rios_
Notary Public
County of Galveston, State of Texas

## Exhibit #1

## Transcript of Illegal Autodialed and Prerecorded Message Call to Cell Phone Number 281-468-9701 that is also on the National and State DNC List
## CID No.: 2813151008 01/10/13 at 04:04 p.m.

Illegal prerecorded call for auto insurance quote. Calling CID number – reaches a lead generation call center that claims to pass information obtained during the call to an independent agent:

<u>Transcript of the prerecorded message call:</u>

**Hello**

"This is a public service message regarding information released for drivers licensed by the Department of Motor Vehicles that you are currently overpaying for your auto insurance. To utilize this free service and adjust your current insurance rates or for more information press one now. Press three to be removed from this list."



<u>Calling CID number:</u>

"Thank you for returning our call. We called you in reference to your eligibility for a reduction in your current auto insurance rates. Press one to be connected to a live agent for a new quote. If you do not wish to receive additional calls regarding this limited time offer press three. Thank you for returning our call."

## Exhibit #1

# Exhibit #2

## Transcript of Illegal Autodialed and Prerecorded Message Call to Cell Phone Number 281-468-9701 that is also on the National and State DNC List
## CID No.: 8476004906 02/08/13 at 12:35 p.m.

Illegal prerecorded call for auto insurance quote.

<u>Transcript of the prerecorded message call:</u>

*Hello*

"This is a public service message regarding information released for drivers licensed by the Department of Motor Vehicles that you are currently overpaying for your auto insurance. To utilize this free service and adjust your current insurance rates or for more information press one now. Press three to be removed from this list."

*One key tone. Call is disconnected.*



Calling CID: "…number is not in service. Please check the number and try again. Good bye."

# Exhibit #2

# Exhibit #3

## Transcript of Illegal Autodialed and Prerecorded Message Call to Cell Phone Number 281-455-9402 that is also on the National and State DNC List
## CID No.: 8476004906 02/11/13 at approx. 11:00 a.m.

Illegal prerecorded call for auto insurance quote.

Transcript of the prerecorded message call:

**Hello**

"This is a public service message regarding information released for drivers licensed by the Department of Motor Vehicles that you are currently overpaying for your auto insurance. To utilize this free service and adjust your current insurance rates or for more information press one now. Press three to be removed from this list."

*One key tone. Connected to rep and made do-not-call demand. Rep stated that the number would be placed on a do-not-call and hung up.*



Calling CID: "…number is not in service. Please check the number and try again. Good bye."

# Exhibit #3

**Exhibit #4 Page 1**

Joe Shields
16822 Stardale Lane
Friendswood, Texas 77546
Home: 281-482-7603

Priority Mail with Delivery Confirmation: 0312 0090 0001 1608 1103

January 30th, 2013

Pac-West Telecomm Inc.
CLEC Certificate No: 60740
Attn: Robert H. Turner
4210 Coronado Avenue
Stockton, California 95204

Mr. Turner:

Pursuant to the Public Utility Commission of Texas (hereinafter "PUCT") Substantive Rules[1], I hereby file this ADAD complaint against the subscriber to 2813151008 for the initiation, using an ADAD, of a prerecorded telephone solicitation to my cellular telephone number on 01/13/13 at 04:04 p.m. without my prior express consent and without registration of the ADAD in violation of state and federal statutes. That does include a criminal offense in Texas for calling a cell number with an automated and prerecorded telemarketing call without prior express consent of the called party. See Texas Business and Commerce Code §305.001 and §305.052 a copy of which is attached.

The prerecorded telephone solicitation originated from 2813151008 (HSTNTXBADS0) which belongs to Pac-West Telecom Inc. See the enclosed caller ID print out. The number was a working number at the time the illegal ADAD call was received as calling that number reached a call center representative. See enclosed transcript of the illegal prerecorded telephone solicitation and result of my call to the 2813151008 number[2]. Note that the received prerecorded message and my call(s) to the 2813151008 were recorded and full transcripts can be provided if required.

Please note that a carrier that receives a written ADAD complaint must provide the complaint and a filled out PUCT designated form to the PUCT within three days of receipt of the complaint. See PUCT Substantive Rules §26.125(e)(3)(C) a copy of which is attached. I would appreciate it greatly if a copy of the required response is provided to me together with the required notice to me that my complaint has been forwarded to the PUCT.

Please do not hesitate to contact me if there are any questions about this ADAD complaint. I look forward to the timely attention to this matter.

Thank you,

*Joe Shields*

Joe Shields

---

[1] PUCT Substantive Rules §26.125(e)(3) A LEC that receives a complaint relating to the use of an ADAD shall send the complaint to the commission according to the following guidelines:
(A) the complaint shall be recorded on a form prescribed by the commission;
(B) the LEC shall inform the complainant that the complaint, including the identity of the complainant and other information relevant to the complaint, will be forwarded to the commission;
(C) the complaint form and any written complaint shall be forwarded to the commission **within three business days** of its receipt by the LEC.
[2] This emphatically rejects Defendant's argument and shows that merely "participating" in the call is insufficient to constitute prior "express" permission to make a prerecorded call. Consent must be obtained before initiating the call itself. *Margulis v. P&M Consulting*, 121 S.W.3d 246, 2003 TCPA Rep 1248 (Mo. App. E.D. Nov. 18, 2003) (order affirming trial decision) See also: Purporting to obtain consent during the call, such as requesting that a consumer "press 1" to receive further information, does not constitute the prior consent necessary to deliver the message in the first place, as the request to "press 1" is part of the telemarketing call. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, (Jul 03, 2003) Para. 102

**Exhibit #4 Page 1**

**Exhibit #4 Page 2**

# Transcript of Illegal Autodialed and Prerecorded Message Call to Cell Phone Number 281-468-9701 that is also on the National and State DNC List
## CID No.: 2813151008 01/10/13 at 04:04 p.m.

Illegal prerecorded call for auto insurance quote. Calling CID number – reaches a lead generation call center that claims to pass information obtained during the call to an independent agent:

Transcript of the prerecorded message call:

***Hello***

"This is a public service message regarding information released for drivers licensed by the Department of Motor Vehicles that you are currently overpaying for your auto insurance. To utilize this free service and adjust your current insurance rates or for more information press one now. Press three to be removed from this list."



Calling CID number:

"Thank you for returning our call. We called you in reference to your eligibility for a reduction in your current auto insurance rates. Press one to be connected to a live agent for a new quote. If you do not wish to receive additional calls regarding this limited time offer press three. Thank you for returning our call."

**Exhibit #4 Page 2**

Exhibit #4 Page 3

**CHAPTER 26.  S**  **COMMUNICATIONS PROVIDERS.**

**Subchapter F.    REGULATION OF TELECOMMUNICATIONS SERVICE.**

**§26.125.    Automatic Dial Announcing Devices (ADADs).**

(a)  **Purpose.** The purpose of this section is to regulate the use of ADADs.

(b)  **Requirements for use of an ADAD.** A person who operates an ADAD to make a telephone call in which the device plays a recorded message when a connection is completed to a telephone number must comply with the following requirements.

    (1)  An ADAD operator must obtain a permit from the commission and give written notice specifying the type of device to be connected to each telecommunications utility over whose system the device is to be used.

    (2)  The device must not be used for random number dialing or to dial numbers by successively increasing or decreasing integers. In addition, the device must not be used in a way such that two or more telephone lines of a multi-line business are engaged simultaneously.

    (3)  Within the first 30 seconds of the call, the ADAD message must clearly state the nature of the call, the identity of the business, individual, or other entity initiating the call, and the telephone number (other than that of the ADAD which placed the call) or address of the business, individual, or entity. This paragraph does not apply to the ADAD if the ADAD is used:

        (A)  for debt collection purposes in compliance with applicable federal law and regulations; and

        (B)  by a live operator for automated dialing for hold announcement purposes.

    (4)  The entire ADAD message must be delivered in a single language.

    (5)  The device must disconnect from the called person's line no later than five seconds after the call is terminated by either party or, if the device cannot disconnect within that period, a live operator must introduce the call and receive the oral consent of the called person before beginning the message. In addition, the device must comply with the line seizure requirements in 47 Code of Federal Regulations §68.318(c).

    (6)  The device, when used for solicitation purposes, must have a message shorter than 30 seconds or have the technical capacity to recognize a telephone answering device on the called person's line and terminate the call within 30 seconds.

    (7)  All ADAD solicitors shall meet the requirements for telephone solicitors set forth in §26.126 of this title (relating to Telephone Solicitation).

    (8)  For calls terminating in Texas, the device must not be used to make a call:

        (A)  for solicitation before noon or after 9:00 p.m. on a Sunday or before 9:00 a.m. or after 9:00 p.m. on a weekday or a Saturday; or

        (B)  for collection purposes at an hour at which collection calls would be prohibited under the federal Fair Debt Collection Practices Act (15 United States Code §1692, et seq.).

    (9)  Calls may not be made to emergency telephone numbers of hospitals, fire departments, law enforcement offices, medical physician or service offices, health care facilities, poison control centers, "911" lines, or other entities providing emergency service. In addition, calls may not be made to telephone numbers of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment, any telephone numbers assigned to paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier, or any service for which the called party is charged for the call.

    (10)  If during a call a cross-promotion or reference to a pay-per-call information service is made, the call must include:

        (A)  a statement that a charge will be incurred by a caller who makes a call to a pay-per-call information services telephone number;

        (B)  the amount of the flat-rate or cost-per-minute charge that will be incurred or the amount of both if both charges will be incurred; and

Exhibit #4 Page 3

Exhibit #4 Page 4

CHAPTER 26.  SUBSTANTIVE RULES APPLICABLE TO TELECOMMUNICATIONS
PROVIDERS.

Subchapter F.  REGULATION OF TELECOMMUNICATIONS SERVICE.

**§26.125(b)(10) continued**

(C)  the estimated amount of time required to receive the entire information offered by the service during a call.

(c)  **Permit to operate an ADAD.**

(1)  An application for a permit to use one or more ADADs must be made using a form prescribed by the commission and must be accompanied by a fee of $50.  A permit is valid for one year after its date of issuance.  An application for a renewal permit shall be filed using the form prescribed by the commission, accompanied by a fee of $15, not less than 90 days prior to the expiration date of the current permit.

(2)  Each application for the issuance or renewal of a permit under this section must contain the telephone number of each ADAD that will be used and the physical address from which the ADAD will operate in the format required by the commission.  If the telephone number of an ADAD or the physical address from which the ADAD operates changes, the owner or operator of the ADAD shall notify the commission by certified mail in the required format of each new number or address not later than the 48th hour before the hour at which the ADAD will begin operating with the new telephone number or at the new address.  If the owner or operator of an ADAD fails to notify the commission as required by this subsection within the period prescribed by this subsection, the permit is automatically invalid.

(3)  In determining if a permit should be issued or renewed, the commission will consider the compliance record of the owner or operator of the ADAD.  The commission may deny an application for the issuance or renewal of a permit because of the applicant's compliance record.

(4)  A local exchange company (LEC) may obtain, on request to the commission, a copy of a permit issued under this section and of any changes relating to the permit.

(5)  The commission may revoke a permit to operate an ADAD for failure to comply with this section.

(d)  **Exceptions.**  This section does not apply to the use of an ADAD to make a telephone call:

(1)  relating to an emergency or a public service under a program developed or approved by the emergency management coordinator of the county in which the call was received; or

(2)  made by a public or private primary or secondary school system to locate or account for a truant student.

(e)  **Complaints, investigation, and enforcement.**

(1)  If the commission determines that a person has violated the requirements of this section, the telecommunications utility providing service to the user of the ADAD shall comply with a commission order to disconnect service to the person.  The telecommunications utility may reconnect service to the person only on a determination by the commission that the person will comply with this section.  The telecommunications utility shall give notice to the person using the ADAD of the telecommunications utility's intent to disconnect service not later than the third day before the date of the disconnection, except that if the ADAD is causing network congestion or blockage, the notice may be given on the day before the date of disconnection.

(2)  A telecommunications utility may, without an order by the commission or a court, disconnect or refuse to connect service to a person using or intending to use an ADAD if the telecommunications utility determines that the device would cause or is causing network harm.

(3)  A LEC that receives a complaint relating to the use of an ADAD shall send the complaint to the commission according to the following guidelines:

(A)  the complaint shall be recorded on a form prescribed by the commission;



Exhibit #4 Page 4

Exhibit #4 Page 5

CHAPTER 26.  SUBSTANTIVE RULES APPLICABLE TO TELECOMMUNICATIONS PROVIDERS.

Subchapter F.  REGULATION OF TELECOMMUNICATIONS SERVICE.

§26.125(e)(3) continued

(B)  the LEC shall inform the complainant that the complaint, including the identity of the complainant and other information relevant to the complaint, will be forwarded to the commission;

(C)  the complaint form and any written complaint shall be forwarded to the commission within three business days of its receipt by the LEC.

(f)  **Permit suspension/child support enforcement.**  In consideration of the Texas Family Code Annotated, Chapter 232, as it may be subsequently amended, which provides for the suspension of state-issued licenses for failure to pay child support, the commission shall follow the procedures set out in this subsection.

(1)  **Provision of information to a Title IV-D agency.**  Upon request, the commission shall provide a Title IV-D agency with the name, address, social security number, license renewal date, and other identifying information for each person who holds, applies for, or renews an ADAD permit issued by the commission. This information shall be provided in a format agreed to between the Title IV-D agency and the commission.

(2)  **Suspension of permit.**  Upon receipt of a final order issued by a court or a Title IV-D agency suspending an ADAD permit under the provisions of the Texas Family Code, Chapter 232, the commission shall immediately:

(A)  record the suspension of the permit in the commission's files; and

(B)  notify the telecommunications utility providing service to the user of an ADAD that the permit has been suspended.

(3)  **Service disconnection.**  Upon receipt of notification by the commission that a permit has been suspended under the provisions of this subsection, the telecommunications utility providing service to that user of an ADAD shall immediately disconnect service to that person.

(4)  **Refund of fees.**  A person who holds, applies for, or renews an ADAD permit issued by the commission that is suspended under the provisions of this subsection is not entitled to a refund of any fees paid under subsection (c) of this section.

(5)  **Reinstatement.**  The commission may not modify, remand, reverse, vacate, or reconsider the terms of a final order issued by the court or a Title IV-D agency suspending a permit under the provisions of the Texas Family Code, Chapter 232. However, upon receipt of an order by the court or Title IV-D agency vacating or staying an order suspending a person's permit to operate an ADAD, the commission shall promptly issue or re-issue the affected permit to that person if that person is otherwise qualified for the permit and has paid the applicable fees as set out in subsection (c) of this section.

(g)  **Penalties.**  A person who operates an ADAD without a valid permit, with an expired permit, or with a permit that has been suspended under the provisions of subsection (f) of this section or who otherwise operates the ADAD in violation of this section or a commission order, is subject to an administrative penalty of not more than $1,000 for each day or portion of a day during which the ADAD was operating in violation of this section. However, nothing in this subsection is intended to limit the commission's authority under the Public Utility Regulatory Act §15.021, *et seq.*

Exhibit #4 Page 5

# Exhibit #4 Page 6

**Form to be completed by th**

*Please submit this form to:*
Public Utility Commission of Texas
ATTENTION: CUSTOMER PROTECTION
P. O. Box 13326
Austin, Texas 78711-3326
Fax: (512) 936-7003
E-mail: customer@puc.state.tx.us

| FOR COMMISSION USE ONLY |
| --- |
| ADAD Permit Number: _____ |
| Date Issued: _____ |
| Expiration Date: _____ |

### NOTIFICATION OF COMPLAINT
### RECEIVED BY
### A LOCAL EXCHANGE CARRIER
### RELATING TO THE USE OF AN ADAD
### PUC Substantive Rule § 26.125

Name of Complainant: _____ (First Name, Last Name).

Complaint received by Local Exchange Carrier on _____ (Month, Day, Year).

Indicate whether the complaint was received by ( ) Mail, ( ) Fax, ( ) E-mail, ( ) Telephone.

If complaint was received by telephone, summarize the nature of the complaint here:


Provide the following information regarding the calling party against whom the complaint was lodged:

| Identity of Account Holder | |
| --- | --- |
| Street Address | |
| City, State, ZIP | |
| Telephone Number | |

Indicate whether the address information provided is a [ ] residential address
[ ] business address
[ ] mailing address

Indicate whether the telephone number provided is unpublished: [ ] Yes [ ] No.

Indicate whether LEC was notified of ADAD pursuant to P.U.C SUBST .R. 26.125(b)(1): [ ] Yes
[ ] No.

Other information relevant to this complaint:



Name of Local Exchange Carrier: _____

Complaint forwarded to the PUC by _____
                    (LEC Employee: First Name, Last Name, Title)

Questions regarding the information submitted on this form should be directed to:

| Name of LEC Employee | |
| --- | --- |
| Title | |
| Telephone Number | |
| Fax Number and/or E-mail Address | |

Indicate whether the following documents were submitted with this form:
[ ] Copy of a written complaint.
[ ] Copy of written communications with the complainant regarding this complaint.
[ ] Other.

# Exhibit #4 Page 6

**Exhibit # 4
Page 7**

01/3...

=== ... ===

Sales Receipt

| Product Description | Sale Qty | Unit Price | Final Price |
|---|---|---|---|

---

@@ STOCKTON CA 95204                          $5.60
Zone-7 Priority Mail
Window Flat Rate Env
  2.10 oz.
  Expected Delivery: Sat 02/02/13
  Label #:
  9505 5102 5075 3031 5740 94
                                    ========
  Issue PVI:                          $5.60

                                    ==========
  Total:                              $5.60

  Paid by:
  Cash                               $20.00
  Change Due:                       -$14.40

@@ For tracking or inquiries go to
USPS.com or call 1-800-222-1811.

In a hurry? Self-service kiosks
offer quick and easy check-out. Any
Retail Associate can show you how.

Order stamps at usps.com/shop or
call 1-800-Stamp24. Go to
usps.com/clicknship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
***********************************
***********************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
***********************************
***********************************


Bill#:1000402270135
Clerk:22

All sales final on stamps and postage
 Refunds for guaranteed services only
    Thank you for your business
***********************************
***********************************
   HELP US SERVE YOU BETTER

**Exhibit # 4
Page 7**

# Exhibit #4 Page 8

 **USPS.COM** Service | Mobile

Search USPS.com or Track Packages 🔍

| Quick Tools ▾ | Ship a Package ▾ | Send Mail ▾ | Manage Your Mail ▾ | Shop ▾ | Business Solutions ▾ |

# Track & Confirm

GET EMAIL UPDATES    PRINT DETAILS

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 9505510250753031574094 *i* | Priority Mail® | Delivered | February 04, 2013, 10:29 am | STOCKTON, CA 95204 | **Expected Delivery By:** February 2, 2013<br><br>USPS Tracking / Delivery Confirmation™ |
| | | Out for Delivery | February 04, 2013, 9:02 am | STOCKTON, CA 95208 | |
| | | Sorting Complete | February 04, 2013, 8:52 am | STOCKTON, CA 95208 | |
| | | Arrival at Post Office | February 02, 2013, 1:32 pm | STOCKTON, CA 95208 | |
| | | Depart USPS Sort Facility | February 02, 2013 | WEST SACRAMENTO, CA 95799 | |
| | | Processed through USPS Sort Facility | February 02, 2013, 1:22 am | WEST SACRAMENTO, CA 95799 | |
| | | Depart USPS Sort Facility | January 31, 2013 | NORTH HOUSTON, TX 77315 | |
| | | Processed at USPS Origin Sort Facility | January 31, 2013, 7:40 pm | NORTH HOUSTON, TX 77315 | |
| | | Dispatched to Sort Facility | January 31, 2013, 5:56 pm | FRIENDSWOOD, TX 77546 | |
| | | Acceptance | January 31, 2013, 3:56 pm | FRIENDSWOOD, TX 77546 | |

## Check on Another Item

What's your label (or receipt) number?

[                    ]    **Find**

---

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2013 USPS. All Rights Reserved.

# Exhibit #4 Page 8



| | |
|---|---|
| *From:* | Jen Olson <jolson@pacwest.com> |
| *Date sent:* | Wed, 20 Feb 2013 14:40:16 -0800 |
| *Subject:* | RE: Re ADAD Complaint |
| *To:* | antitmsweb@sbcglobal.net, Blaine Gilles <bgilles@pacwest.com> |

Mr. Shields,

Pac-West does not have your cell phone number, therefore it would have
been impossible for us to provide your cell phone number to anyone.

As our support team informed you, we have informed our customer of your
complaint and their customer has placed you on their do not call list.
We
have performed as required under the law and there is nothing further we
can do at this time. FCC rules prohibit us from providing the identity
of
our customer to anyone.

Thank you,
Jen

-----Original Message-----
From: antitmsweb@sbcglobal.net [mailto:antitmsweb@sbcglobal.net]
Sent: Wednesday, February 20, 2013 2:28 PM
To: jolson@pacwest.com; BGILLES@PACWEST.COM
Subject: Re ADAD Complaint

Mrs. Olson and Mr. Gilles:

How dare you give these people making illegal robocalls my cell number.
By
doing so you have made it crystal clear that you will not take any
action
to stop the illegal behavoir occuring on your network. Further, it is
also
crystal clear that you intend to protect those that are engaging in
illegal behavoir from proper identification.

Failing to comply with Texas law on ADAD complaints and giving my cell
numnber to your customer causing even more invasion of my privacy is
intolerable. It is my intention to see to it that something like this
never occurs again. Consequently, the attached will be filed Monday
February 25th, 2013 unless you provide the identity of your customer to
the Public Utility Commission and me by close of business Friday the
22nd
of February 2013.

As you can see from the attached concealing the identity of your
customer
will not be tolerated.

Joe Shields
16822 Stardale Lane
Friendswood, Texas 77546
Phone: 281-482-7603

**Exhibit #5**

# Exhibit #6

**Subject:** National Do Not Call Registry - Your Registration Is Confirmed
**From:** Verify@DonotCall.gov
**Date:** 2/22/2013 1:18 PM
**To:** ▮▮▮▮▮▮▮▮▮▮

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9701 on September 12, 2007. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

# Exhibit #6